**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| JOEL B. PRATE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE VILLAGE OF DOWNERS GROVE, | ) |
| OFFICER RANDALL J. CAUDILL JR., | ) |
| OFFICER NICHOLAS LINKLATER, | )   No. 11-cv-3656 |
| OFFICER ROBERT BYLLS, | ) |
| OFFICER JOHN YOCUM, OFFICER PHIL | ) |
| STEIK, SERGEANT JAMES MALY, | ) |
| SERGEANT JOE KARMIA, OFFICER GREG | ) |
| MAYYOU, as well as OTHER UNKNOWN | ) |
| VILLAGE OF DOWNERS GROVE | ) |
| EMPLOYEES, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court are two separate Federal Rule of Civil Procedure ("Rule") 12(b)(6) motions to dismiss–one on behalf of the Village of Downers Grove and Nicholas Linklater and the other on behalf of Officers Bylls, Yocum, Steik, Maly, Karmia and Mayyou. Also before the Court is Defendant Village's motion to strike the prayer for punitive damages. For the reasons set forth below, the Court grants the motions in part and denies them in part. The Court further directs Plaintiff to file an amended Complaint consistent with the terms of this Order by November 9, 2011.

## INTRODUCTION

On May 31, 2011, Plaintiff Joel B. Prate filed a Complaint against the Village of Downers Grove, Officer Randall J. Caudill Jr., and other unknown Village of Downers Grove employees, alleging that Defendants falsely arrested and unlawfully detained him without probable cause in violation of the Fourth Amendment, failed to intervene to prevent the violation of his constitutional rights, maliciously prosecuted him, intentionally inflicted emotional distress on him, and conspired to commit unlawful acts. (R. 1, Compl.) Plaintiff also asserted a *Monell* policy and practice claim under 42 U.S.C. § 1983 and an indemnification claim against the Village, and further asserted that the Village is liable for its employees' conduct under the theory of *respondeat superior*. (*Id.*) On July 25, 2011, Plaintiff filed a First Amended Complaint, alleging the same facts and legal claims and adding Officer Nicholas Linklater as a named Defendant. (R. 17, Am. Compl.) Plaintiff filed a Second Amended Complaint on August 17, 2011, again asserting the same factual allegations and legal claims, but adding Officer Robert Bylls, Officer John Yocum, Officer Phil Steik, Sergeant James Maly, Sergeant Joe Karmia, and Officer Greg Mayyou as named Defendants. Plaintiff seeks compensatory damages from all Defendants and further seeks punitive damages from the individual defendants in their "individual capacities." (*Id.* at 11, Prayer for Relief.)

## FACTUAL ALLEGATIONS

Plaintiff alleges the following facts in his Second Amended Complaint. He is a 52-year old man who lives in Utah. (Am. Compl ¶ 5.) Until the events underlying his lawsuit occurred, he was self-employed as a long-haul truck driver for five years, during which time law enforcement officers never stopped, ticketed, or charged him with a drug or alcohol related

offense. (*Id.* ¶¶ 6-7.) Plaintiff and his son, Jeff Prate, drove as a team. (*Id.* ¶ 8.)

In the spring of 2009, Plaintiff suffered a pulmonary embolism. (*Id.* ¶ 10.) His doctor prescribed Coumadin, a blood-thinning medication, which he has taken since that time. (*Id.*) Plaintiff receives a blood test each month when he refills his Coumadin prescription so that his blood levels can be monitored to ensure the proper dosage of Coumadin. (*Id.* ¶ 11.) Plaintiff also suffers from chronic pain caused by metal implants in his spine that were made necessary by a spinal birth defect, which was exacerbated by a car accident several years ago. (*Id.* ¶ 12.) His doctor has prescribed a number of additional medications for Plaintiff for his pain and other serious medical conditions. (*Id.* ¶ 13.)

On or around August 23, 2009, while Plaintiff was visiting his daughter in Villa Park, Illinois, he received a call from a trucking company assigning his son and him to a job that required a pickup on August 25, 2009 at 7:00 a.m. (*Id.* ¶ 14.) Plaintiff and his son were scheduled to be on the road for 30 days. (*Id.*) To prepare for the trip, Plaintiff took his prescriptions to the pharmacy to be refilled, and he received enough of each medication to last for the next 30 days. (*Id.* ¶ 15.) The pharmacy dispensed each medication in a pill bottle with an adhesive label attached. (*Id.*)

At approximately 2:00 or 3:00 a.m. on August 25, 2009, Plaintiff and his son drove Plaintiff's vehicle to the emergency room at Advocate Good Samaritan Hospital so that Plaintiff could have the Coumadin levels in his blood tested and his medication adjusted, if necessary, before his trip. (*Id.* ¶ 16.) Plaintiff parked on the second floor of the parking garage, approximately 50-75 feet away from the emergency room entrance. (*Id.* ¶ 17.) In the emergency room, Plaintiff spoke with an intake nurse, who told him that the blood test would have to be

administered at the hospital's Coumadin Clinic, which did not open until 6:00 a.m. (*Id.* ¶ 18.)

While Plaintiff and his son waited for the Coumadin Clinic to open, they fell asleep in Plaintiff's vehicle, which was still parked near the emergency room entrance. (*Id.* ¶ 19.) Plaintiff awoke to a police officer (whom Plaintiff alleges was one of the Defendant Officers in his case) rapping on the driver's side window of the vehicle, and he saw several uniformed officers in positions around his vehicle. (*Id.* ¶ 20.) Plaintiff rolled his window down, and, upon the officer's request, showed the officer his valid Utah Class A commercial driver's license. (*Id.* ¶ 22.) The police officer reviewed Plaintiff's driver's license, wrote down the license number, and asked Plaintiff if he had any drugs or weapons in his vehicle. (*Id.* ¶ 23.) Plaintiff replied that he did not, and he consented to a search of his vehicle. (*Id.* ¶¶ 24-25.) One of the Defendant Officers found Plaintiff's prescription medications during the search and stated "Oh, we've got some good prescription drugs here," or words to that effect. (*Id.* ¶ 27.) The Defendant Officers then arrested Plaintiff for driving under the influence and took him into custody. (*Id.* ¶ 28.)

Plaintiff alleges that the Defendant Officers' sole purpose in arresting him was to confiscate his prescription medications, "including potent pain medication that, upon information and belief, could fetch thousands of dollars on the black market." (*Id.* ¶ 29.) The Defendant Officers never inventoried the prescription medication that they confiscated, nor, with the exception of one pill, did they log it into evidence. (*Id.* ¶ 30.) Instead, they stole it for their own purposes. (*Id.*) Plaintiff further alleges that in order to cover up their theft of his prescription medications, Defendant Officers falsely and maliciously caused Plaintiff to be charged with nine counts of driving under the influence–one count for each medication in his possession. (*Id.* ¶ 31.) Defendant Officers also charged Plaintiff with not possessing a valid driver's license, even

though his Utah commercial driver's license that he gave to them was valid. (*Id.* ¶ 32.) Defendant Linklater signed the criminal complaint against Plaintiff. (*Id.* ¶ 43.) When Plaintiff was released from custody, Defendant Officers did not return his prescription medication to him, and he accordingly suffered serious pain and medical complications for one month until he could refill his prescriptions. (*Id.* ¶¶ 33-34.) Plaintiff alleges that "[a]ll of the Defendants' interactions with [him] were undertaken under color of law, and within the scope of their employment." (*Id.* ¶ 56.) He further alleges that because each Defendant acted within the scope of his employment, the Village is liable for damages arising out of each Defendant's conduct. (*Id.* ¶ 57.)

Plaintiff alleges that Defendant Caudill was one of the officers who arrested him and that Defendant Caudill subsequently attended his trial. (*Id.* ¶ 40.) Defendant Caudill is currently under indictment for engaging in a longstanding conspiracy to abuse his position as a Downers Grove police officer to steal drugs from citizens in order to sell them on the black market. (*Id.* ¶ 41.) According to Plaintiff, the other Defendant Officers agreed with Defendant Caudill to steal Plaintiff's medications in order to sell them. (*Id.* ¶ 42.)

After a bench trial on July 21, 2010, Plaintiff was acquitted of all charges. (*Id.* ¶ 35.) He alleges that because of Defendant Officers' conduct, he missed the scheduled pickup on August 25, 2009 and has been unable to work since that time. (*Id.* ¶¶ 36-37.) Additionally, he asserts that all trucking companies have a zero tolerance policy for substance abuse, and the nine charges against him effectively ended his career even though they were ultimately dismissed. (*Id.* ¶ 37.) He also alleges that he suffered a heart attack from the stress of not being able to work and from having to defend against the false charges. (*Id.* ¶ 38.)

**LEGAL STANDARD**

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011) (internal quotation and citation omitted).

Pursuant to Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). As the Seventh Circuit has explained, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities[.]" *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570); *see also McCauley v. City of Chicago*, No. 09-3561, --- F.3d ----, 2011 WL 4975644, *3 (7th Cir. Oct. 20, 2011). "[W]hen

ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). Legal conclusions and conclusory allegations, however, are not entitled to a presumption of truth. *Iqbal*, 129 S.Ct. at 1951; *McCauley*, 2011 WL 4975644, at *4.

"[I]f a plaintiff pleads facts that show its suit [is] barred by a statute of limitations, it may plead itself out of court under a Rule 12(b)(6) analysis." *Reeves v. Frierdich*, No. 99-1201, 2000 WL 10284 (7th Cir. Jan. 4, 2000) (citations omitted); *see also Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008).

## ANALYSIS

Defendants Linklater, Bylls, Yocum, Steik, Maly, Karmina and Mayyou (collectively, the "Officer Defendants")[1] and Defendant Village seek dismissal of Plaintiff's state law claims against them, including malicious prosecution, intentional infliction of emotional distress, and conspiracy. The Officer Defendants argue that the Court should dismiss those claims because Plaintiff did not file his Complaint against them within the one-year statute of limitations provided in 745 ILCS 10/8-101. They assert that the statute of limitations for Plaintiff's state law claims began accruing on the date he was acquitted of the driving under the influence charges, which was July 21, 2010. Even though Plaintiff brought his state law claims against the Village within the statute of limitations period, the Village contends that insofar as Plaintiff's state law claims against it are predicated on the conduct of the Officer Defendants, the Court

---

[1] Defendant Caudill is not included within the definition of "Officer Defendants" in the Analysis section of this Memorandum and Order since he has not moved to dismiss the Second Amended Complaint. Plaintiff named Defendant Caudill in the original Complaint filed on May 31, 2011.

7

should dismiss those claims. Defendants further ask the Court to strike Plaintiff's prayer for punitive damages against the Village.

## I. The Court Denies as Moot the Officer Defendants' Motion to Dismiss Plaintiff's State Law Claims

Plaintiff's state-law claims are subject to the one-year statute of limitations in the Local Governmental and Governmental Employees Tort Immunity Act. *See* 745 ILCS 10/8-101; *Williams v. Lampe*, 399 F.3d 867, 870 (7th Cir. 2005). Contrary to the allegations in his Second Amended Complaint, Plaintiff states in his responses to Defendants' motions that his state law claims are against Defendant Caudill and the Village only. (R. 47, ¶¶ 5, 10.) Therefore, there are no state law claims pending against the Officer Defendants. Accordingly, the Court denies the Officer Defendants' motion to dismiss the state law claims as moot. To avoid future confusion, the Court directs Plaintiff to amend its Complaint by November 9, 2011 to reflect that his state law claims are against Defendant Caudill and the Village only.

## II. The Court Denies the Village's Motion to Dismiss Plaintiff's State Law Claims

Plaintiff argues that even though there are no pending state law claims against the Officer Defendants as named parties, his state law claims against the Village based on the Officer Defendants' conduct remain viable under the theory of *respondeat superior*. Specifically, Plaintiff argues that the Village is liable for the Officer Defendants' conduct to the extent it violates state law even if the Officer Defendants are not named Defendants in the action. (R. 43 at 3.) The Village disagrees, arguing that Plaintiff cannot assert any state law claims against the Officer Defendants as named Defendants because the statute of limitations has expired. Therefore, it contends, because Plaintiff cannot assert state law claims against the Officer

Defendants as named parties, the Village cannot be held liable for any of their purported violations of state law.

Plaintiff does not assert any state law claims directly against the Village.[2] Rather, all of Plaintiff's state law claims against the Village are based on the theory of *respondeat superior*, pursuant to which an employer is held vicariously liable for its employees' acts that are committed within the scope of their employment. *See Alms v. Baum*, 343 Ill. App.3d 67, 71, 796 N.E.2d 1123, 1127 (Ill. App. 1st Dist. 2003). *Respondeat superior* is a theory of derivative liability. *See Sperl v. C.H. Robinson Worldwide, Inc.*, 408 Ill. App.3d 1051, 1060, 946 N.E.2d 463, 473 (2011) (citing *Moy v. County of Cook*, 159 Ill.2d 519, 524, 640 N.E.2d 926 (1994)).

Courts in this District have held that when a statute of limitations bars a plaintiff's claims against an identified employee and the plaintiff names the employer as a defendant within the statute of limitations, the bar of the plaintiff's claim against the employee cannot be grounds for dismissing the claim against the employer. *See Wright v. Village of Calumet Park*, No. 09-cv-3455, 2009 WL 4545191, at *4 (N.D. Ill. Dec. 2, 2009); *Beal v. City of Chicago*, No. 04 C 2039, 2007 WL 1029364, at 14 (N.D. Ill. Mar. 30, 2007); *Vodak v. City of Chicago*, No. 03 C 2463, 2006 WL 1049736, at *1 (N.D. Ill. Apr. 19, 2006). This is so because "[w]hen an employer is sued under a theory of *respondeat superior*, 'the servant is not a necessary party in an action against the master.'" *Wright*, 2009 WL 4545191, at *4 (quoting *McCottrell v. City of Chicago*, 135 Ill. App.3d 517, 481 N.E. 2d 1058, 1059 (Ill. App. 1st Dist. 1985)); *see also Fells v. County of DuPage*, No. 06 C 2519, 2006 WL 3692414, at *5 (N.D. Ill. Dec. 12, 2006) ("it is sufficient

---

[2] The only primary liability claim against the Village is Plaintiff's *Monell* claim, which is not at issue in Defendants' motions.

for recovery against a public entity to prove that an identified employee would be liable even though that employee is not named a defendant in the action") (quoting *McCottrell*, 135 Ill. App.3d at 520)).

In *McCottrell*, the Illinois Appellate Court held that the City of Chicago could be held liable for the wilful and wanton acts of its employees under the theory of *respondeat superior* even though the plaintiff did not name the employees as party defendants in the complaint. 135 Ill. App.3d at 518-19. The court reasoned that Illinois courts have "long recognized that in an action by a third party based on injuries caused by the negligence of the servant, the servant is not a necessary party in an action against the master." *Id.* at 519 (citations omitted). The court continued on to explain that "[c]learly, one need not name each employee of a corporation in a suit for injuries sustained in order to prevail against the corporate employer. Rather, a litigant may sue either the master or the servant. . . ." 135 Ill. App.3d at 519.

The Village urges the Court not to follow the *Vodak*, *Beal* and *Wright* holdings, arguing that they all rely, either directly or indirectly, on the Illinois Appellate Court's holding in *McCottrell*. *McCottrell*, the Village argues, is premised on a faulty interpretation of Illinois law. The Court rejects the Village's argument. The Seventh Circuit has cited *McCottrell* repeatedly with approval. *See, e.g., Williams v. Rodriguez*, 509 F.3d 392, 405 (7th Cir. 2007) ("our determination that the unnamed defendant is not himself a properly named defendant in this suit does not negate the City's potential liability for his conduct"); *Gordon v. Degelmann*, 29 F.3d 295, 299 (7th Cir. 1994) (noting that the defendant village could be liable for damages arising out of an unidentified employee's conduct even though the employee was not named as a party defendant). Moreover, as indicated above, several courts in this District have followed its

10

holding in cases factually similar to this one. *See, e.g., Wright*, 2009 WL 4545191, at *4; *Fells*, 2006 WL 3692414, at *5.

Defendants also argue that Plaintiff's naming of "unknown Village of Downers Grove Employees" as defendants does not toll the statute of limitations for Plaintiff's state law claims. (R. 31, at 5-6 (citing *Martinez v. Wallace*, 182 F.3d 922 (7th Cir. 1999); *Baskin v. City of Des Plaines,* 138 F.3d 701 (7th Cir. 1998); *Sassi v. Breier*, 584 F.2d 234, 235 (7th Cir. 1978) and *Worthington v. Wilson*, 8 F.3d 1253 (7th Cir. 1993). Defendants' argument, however, is misplaced because Plaintiff does not argue here that naming "unknown Village of Downers Grove Employees" tolled the statute of limitations for his state law claims against the Village. Rather, Plaintiff argues that he named the Village as a Defendant within the applicable one-year statute of limitations for his state law claims, and that, under a theory of *respondeat superior*, the Village may be liable for its employees' alleged violations of state law regardless of whether Plaintiff named particular employees as party Defendants in the Complaint.

Under Illinois law, Plaintiff did not need to individually name the Officer Defendants as parties to the lawsuit in order to recover against the Village on a *respondeat superior* theory for the Officer Defendants' purported violations of state law. *See Williams*, 509 F.3d at 405; *Gordon*, 509 F.3d at 405.[3] If, however, the evidence later reveals that the Officer Defendants' conduct did not violate state law, then the Village cannot be vicariously liable for those

---

[3] Although Plaintiff's § 1983 constitutional claims are not at issue in Defendants' motion, the Court's clarifies that its decision does not apply to those claims because there is no *respondeat superior* liability under § 1983. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (holding that there is no *respondeat superior* liability under § 1983); *Palka v. City of Chicago*, --- F.3d ----, 2011 WL 4921385 (7th Cir. Oct. 18, 2011) (same). Therefore, Plaintiff must specifically name each individual officer as a party Defendant against whom he alleges his § 1983 claims within the two-year statute of limitations.

violations. *See* 745 ILCS 10/2-109 ("a local public entity is not liable for any injury resulting from any act or omission of its employee where the employee is not liable"). At the pleading stage, however, it is sufficient under Illinois law to name either the servant or the master in the lawsuit, and therefore Plaintiff's failure to timely name the Officer Defendants as defendants does not preclude Plaintiff from seeking recovery from the Village based on their conduct.

### III. Plaintiff May Not Recover Punitive Damages From the Village

Plaintiff concedes the that Village may not be held liable for punitive damages. (R. 43 at 5.) Plaintiff asserts that he seeks punitive damages from the individual defendants only, but the Second Amended Complaint is less than clear. Although it requests compensatory damages as well as "punitive damages against the Defendant Officers in their individual capacities," it also states that the Village is "liable as each Defendant's employer for any resulting damages and award of attorneys' fees." (Am. Compl. ¶ 57, Prayer for Relief.) Therefore, to clear up any confusion, the Court strikes the prayer for punitive damages to the extent it requests punitive damages from the Village. *See Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981) (municipalities are not subject to punitive damages in suits under 42 U.S.C. § 1983); *Robinson v. City of Harvey, Ill.*, 617 F.3d 915, 916 (7th Cir. 2010) (same); 745 ILCS 10/2-102 (a local public entity is not liable to pay punitive damages in any action brought directly or indirectly against it by an injured party or third party).

### CONCLUSION

For the reasons set forth above, the Court denies as moot the Officer Defendants' motion to dismiss Plaintiff's state law claims, denies the Village's motion to dismiss Plaintiff's state law claims, and strikes Plaintiff's prayer for punitive damages to the extent it seeks to recover

punitive damages from the Village. Plaintiff must file an amended Complaint consistent with this Order by November 9, 2011.

**Date:** November 7, 2011

                                    **ENTERED**

                                    _____
                                    **AMY J. ST. EVE**
                                    **United States District Court Judge**